## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTINE LINDSAY and<br>ROBERT MCGRUDER<br><br>**Individually And On Behalf of All**<br>**Other Persons Similarly Situated**,<br><br>       Plaintiffs,<br><br>   v.<br><br>GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY,<br>       Defendant. | Case No. 1:04-cv-01213-PLF<br>Judge: Paul L. Friedman |

---

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS AND CLASS CERTIFICATION

---

Michael D. Hausfeld, D.C. Bar No. 153742
Charles E. Tompkins, D.C. Bar No. 459854
**COHEN, MILSTEIN, HAUSFELD**
**TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
T: (202) 408-4600
F: (202) 408-4699

Thomas V. Urmy, Jr.
Todd Heyman
**SHAPIRO, HABER & URMY, L.L.P.**
75 State Street
Boston, Massachusetts 02109
T: (617) 439-3939
F: (617) 439-0134

## COUNSEL FOR PLAINTIFFS AND THE PROPOSED CLASS

**TABLE OF CONTENTS**

I.      INTRODUCTION.............................................................................................................1

        A.      GEICO's Arguments Against Notice Are Unsupported By Law.............................1

        B.      The New York Sub-Class should be Certified.........................................................2

II.     ARGUMENT....................................................................................................................4

        A.      Notice Should Not Be Denied Here Merely Because Notice Was Issued In
                *Robinson-Smith*..........................................................................................................4

        B.      The Record is Clear That AD Adjusters Are Similarly-Situated.............................8

        C.      Plaintiffs' Proposed Form Of Notice Is Appropriate............................................10

        D.      Plaintiffs' Motion for Class Certification Should Be Granted...............................11

                1.      GEICO's Jurisdictional Arguments Are Flawed........................................11

                2.      Notices Can Be Designed To Eliminate Class Member Confusion..........12

                3.      New York Class Members Can Waive Their Right To Liquidated
                        Damages By Opting Out Of The New York Subclass...............................13

                4.      The New York State Subclass Is Appropriate for Certification.................15

                        a)      Plaintiff McGruder's Claim is Typical..........................................15

                        b)      Individual Questions Will Not Predominate..................................16

                                (1)     Liability Can Manageably Be Adjudicated
                                        In A Single Proceeding......................................................16

                                (2)     Individualized Damages Questions Will
                                        Not Predominate.................................................................17

                        c)      A Class Action Is Superior And Manageable................................19

III.    CONCLUSION...............................................................................................................19

## I.   INTRODUCTION

### A.   GEICO's Arguments Against Notice Are Unsupported By Law.

Defendant's argument that class members who did not join the *Robinson-Smith* action[1] should not even be afforded notice of this action is unsupported by *any* legal authority and is contrary to the language and purpose of the collective action provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). *See* Def.'s Opposition to Pls.' Mot. For Notice To Potential Collective Action Members And Class Certification ("Opposition"), at 4-5. GEICO's contention also ignores several major factual developments that have dramatically altered the decision-making landscape since GEICO's Auto Damage Adjusters were last afforded an opportunity to assert their rights collectively.

First, Defendant has changed its Auto Damage Adjuster classification and has begun paying overtime compensation to such employees for hours worked over forty in any week. This will no doubt affect a putative class member's assessment of both the strength of the case and the risk that Defendant might retaliate against employees who decide to join this action. Second, *Robinson-Smith* has been litigated for several years. This has afforded employees who did not elect to join *Robinson-Smith* a better factual basis to assess the risks of retaliation, because they have observed what has happened, or, more precisely, what has *not happened*, to their fellow employees who did join *Robinson-Smith*.

Third, this Court has now granted summary judgment in favor of the Plaintiff and the

---

[1] The *Robinson-Smith* action is also before this Court and is captioned *Robinson-Smith v. GEICO*, Civ. A. No. 01-1340 (PLF) ("*Robinson-Smith*"). On Nov. 16, 2001, this Court ordered notice of that action be sent to all Auto Damage Adjusters who worked during the statutory period. *See Robinson-Smith v. GEICO*, Civ. A. No. 01-1340, 2001 U.S. Dist. LEXIS 25516 (D.D.C. Nov. 16, 2001) (attached hereto as Ex. 1).

class in *Robinson-Smith*. This certainly is likely to influence an AD Adjuster's decision as to
whether to join this action, which asserts similar claims. This is especially true in light of the
fact that, at the time the last notice was sent, GEICO sent its adjusters a letter specifically
informing them that *Robinson-Smith* was meritless. *See* Mem. In Supp. of Pls.' Mot. For
Collective Action Notice And Class Certification ("Memorandum"), at Ex. 3 (GEICO's letter to
AD Adjusters). AD Adjusters should be provided an opportunity to decide whether to join this
action with the benefit of this Court's ruling– rather than only GEICO's opinion– regarding the
merits of *Robinson-Smith*.

###### B.      The New York Sub-Class Should Be Certified.

GEICO's arguments against class certification are entirely unsupported by any factual
record and are in direct conflict with prior decisions of this Court. First, GEICO argues that
Plantiff McGruder is not typical because he was an inadequate employee. Opposition at 6. This
argument – in addition to being untested – is irrelevant, because McGruder's skill at auto damage
appraisal is irrelevant to the question of whether appraisal work requires the exercise of sufficient
independent judgment and discretion to qualify for the administrative exemption. Even if
GEICO's *ad hominem* attacks on McGruder turn out to be correct (and there is no evidence that
they will), Plaintiff McGruder's *claim* still will be typical of the *claims* of other class members.
That is all Rule 23(a)(3) requires.[2]

---

[2] GEICO has asked that it be permitted to take the deposition of Plaintiff McGruder (the
proposed New York Subclass representative) prior to the Court's decision regarding class
certification.   Plaintiffs have no objection to this procedure so long as: (1) Mr. McGruder's
personnel file and relevant documents are produced pursuant to Fed. R. Civ. P. 26(a)(1) sufficiently
in advance of the deposition to permit adequate preparation; and (2) the deposition does not delay
notice to potential class members, whose claims are daily being eliminated by the statute of
limitations. *See* 29 U.S.C. § 216(b). Any additional submission by GEICO on the certification issue,

Second, GEICO argues that the predominance requirement of Rule 23(b)(3) is not met because liability can only be adjudicated on an individualized basis. Opposition at 12. This contention is belied by the successful adjudication of liability in *Robinson-Smith*, the sworn testimony of GEICO's 30(b)(6) witness that GEICO simply ignores; the prior finding of this Court, based on Defendant's own affidavit describing the job duties of AD Adjusters as a whole, and case law from around the country adjudicating the exempt status of various classes of employees on a collective basis. *See infra* at 15-18. GEICO was happy to litigate the exemption question on a class-wide basis when GEICO thought it would prevail. Having lost, GEICO cannot now invent individualized differences that it has never before acknowledged.

GEICO's final arguments addressed to Rule 23 are that individualized damages inquiry will be required and that a class action is not superior to other forms of adjudication. This Court already has rejected GEICO's argument regarding damages, stating "Nor do possible variations in individual damage claims defeat class certification." *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, *7 (attached hereto as Ex. 1). As to superiority, GEICO makes no real points except to repeat its earlier, flawed contentions regarding typicality and its unsupported allegations regarding Plaintiff McGruder. GEICO certainly advances no points that would justify denial of certification.

GEICO also takes this opportunity to restate the flawed jurisdictional arguments made in its motion to dismiss and present unsupported speculation that the notice process will be confusing. The first arguments have been adequately addressed in Plaintiffs' Opposition to the

---

however, should be limited to a discussion of the relevance of testimony obtained at Plaintiff McGruder's deposition.

3

Motion to Dismiss, and will only be addressed briefly herein. GEICO's argument that notice will

be confusing is simply self-serving speculation that is inconsistent with the experience of several

courts that have used both opt-in and opt-out notices successfully. Plaintiffs will use two

separate notices – one of which already has been approved by this Court in substance – and can

work with GEICO to assure that the notices adequately apprise class members of their rights and

obligations in this action. This Court should not allow GEICO's feigned concern for class

members – doubtless motivated by a desire to avoid paying the overtime GEICO owes its

employees – to derail Plaintiffs' Motion for Class Certification.

## II.    ARGUMENT

### A.    Notice Should Not Be Denied Here Merely Because Notice Was Issued In *Robinson-Smith*.

GEICO's position that notice should not be issued in this action is wholly unsupported by

law. On the contrary, as GEICO concedes, every AD Adjuster who worked within the statutory

period has a right to file an action under the FLSA to seek unpaid overtime wages. Opposition at

4-5. But, without citing a *single* legal authority, and in direct conflict with unequivocal statutory

language and Supreme Court jurisprudence, Defendant argues that putative class members forfeit

the right to proceed collectively by failing to join the first collective action filed.    *Id.*

Defendant's attempt to block notice of this action – a plainly self-serving effort to keep

class members ignorant of their rights to take "advantage of lower individual costs to vindicate

rights by the pooling of resources" – should be rejected. *Hoffman-La Roche Inc. v. Sperling*, 493

U.S. 165, 170 (1989). First, GEICO's position is inconsistent with both the language of the

FLSA and the Supreme Court's interpretation and discussion of the Act. The FLSA expressly

4

provides that *any* employee or group of employees can bring an action on "behalf of himself or themselves *and other employees similarly situated*." 29 U.S.C. § 216(b) (emphasis added).[3]

Moreover, the Supreme Court has held that "Congress has stated its policy that . . . plaintiffs *should have* the opportunity to proceed collectively." *Hoffman-La Roche*, 493 U.S. at 170 (emphasis added). This is part and parcel of the Court's command that the FLSA be "enforced to the full extent of its terms." *Id.* at 173. This guidance dictates that notice be sent to potential collective action members. *See id.* at 174. Thus, while it is understandable that Defendant seeks to minimize the number of people who know of this action, that is "not the kind of prejudice this Court should recognize." *McNeil v. District of Columbia*, No. CIV.A. 98-3142HHKJM, 1999 WL 571004, at *2 (D.D.C. Aug. 5, 1999) ("the defendants cannot claim any right to nevertheless escape liability for what is due by asking judicial assistance to keep the number of claimants to the barest minimum").

Second, forfeiting the right to proceed collectively would frustrate the congressional purpose behind the FLSA's collective action provisions. These provisions are designed to provide plaintiffs with the "advantage of lower individual costs to vindicate rights by the pooling of resources" and to promote judicial efficiency "by efficient resolution[,] in one proceeding of common issues of law and fact arising from the same" challenged conduct. *Hoffman-LaRoche*, 493 U.S. at 170. If the Court denies the Plaintiffs the opportunity to notify putative class members of their right to participate, those persons effectively will be denied their right to proceed collectively. The practical effect would be to bar the assertion of those persons' FLSA

---

[3] The statute provides for termination of that right in a single circumstance: "the filing of a complaint by the Secretary of Labor . . ." 29 U.S.C. § 216(b). Obviously that exception is not relevant here.

rights altogether, because  the size of any potential individual recovery will pale in comparison to the resources required to pursue a claim against a company with GEICO's resources individually.

Third, GEICO's argument makes no sense as a matter of policy.  Employees may decide not to participate in a collective action for a variety of reasons that may be subject to change – *i.e.*, the individual's financial situation, career goals, personal experiences with litigation, or the assessment of the risk of retaliation or the probability of recovery.  Potential collective action members should not be required to join the first collective action filed simply because it was the first one.

Indeed, this case demonstrates precisely why employees should not be precluded from receiving notice of a second collective action to enforce their rights.  Shortly after notice was issued in *Robinson-Smith,* GEICO sent a letter to all of its adjusters stating that *Robinson-Smith* was meritless.  *See* Memorandum at pp. 5-6; Ex. 3 (GEICO's letter to Adjusters).  This letter certainly must have affected Adjusters' decision as to whether to join *Robinson-Smith* – indeed, there can be no serious question that this was precisely the letter's intent.[4]  Adjusters should now be afforded an opportunity to decide wether to join this action with the benefit of knowing the Court's liability decision in *Robinson-Smith* as a counterpoint to GEICO's prior statements regarding the merits of that action.

In addition, following this Court's July 1, 2004 ruling in favor of Plaintiff as to liability,

---

[4] While GEICO seizes on the fact that Plaintiffs' counsel in *Robinson-Smith* did not object to GEICO's letter, *see* Opposition at 5 n.2, this is immaterial to the issue at hand.  Under applicable case law, GEICO may in some circumstances be permitted to make truthful, non-coercive statements to potential collective action members regarding this action.  That does not mean, however, that those statements did not have the (intended) effect of discouraging individuals from joining this litigation, or that notice is inappropriate now that GEICO's position has been rejected by this Court.

Defendant reclassified its employees as nonexempt and begun paying them overtime.  *See* Def.'s

Mot. For Certification For Interlocutory Appeal, Dkt. No 115, at 4.  That reclassification decision

– especially in light of the July 1 Order – may well affect a putative class member's assessment

of the strength of the case.  *See* Decl. of Christine Bailey[5] ("Bailey Dec."), at ¶5 (attached hereto

as Ex. 2).  Not surprisingly, learning that "GEICO was recently found to have violated the law by

failing to pay Auto Damage Adjusters overtime compensation" influenced Ms. Bailey's decision

to file this action.  *Id.*  Other adjusters should similarly have the opportunity to decide whether to

join this action in light of GEICO's changed classification of their position.

AD Adjuster's reduced fear of retaliation after the adjudication of *Robinson-Smith* also is

a changed circumstance that supports notice in this action.  At the time notice was issued in

*Robinson-Smith*, fear of retaliation discouraged AD Adjusters from joining the lawsuit, including

named Plaintiff Christine Bailey (Lindsay).  *See* Bailey Dec., at ¶4.  Having heard of no instances

of retaliation, Ms. Bailey felt much less concerned about filing the instant action.  *Id.* at  ¶5.

Other adjusters are likely to feel similarly, and are entitled to an opportunity to join this action

without fear of retaliation by GEICO.  *See id.* at ¶6.

In any event, irrespective of any of the foregoing factual developments, the putative class

members have a legal right to join this action.  Defendant's sole argument against notice to all is

the purported concern that notice would "turn into the solicitation of clams."  Opposition at 5.

There simply is no support for this statement.  Court-authorized notice – like the prior notice –

would not constitute solicitation, but rather would merely provide an impartial and orderly

---

[5] Named plaintiff Christine Lindsay married shortly after this action was filed and changed her name to Christine Bailey.  *See* Bailey Dec. at ¶1.

7

mechanism for ensuring that class members receive notice of their right to opt in to this case for a reasonable time, with a cutoff after that time.  Already seven people have learned of and elected to join this action, from over 4 states including New York, Arizona, Florida, and Virginia. Notice will simply provide for a mechanism for management of the litigation and ensure that the notice of this action that class members receive is accurate and impartial.

**B.     The Record Is Clear That AD Adjusters Are Similarly-Situated.**

"It is undisputed that all Auto Damages Adjusters employed by defendant have similar job responsibilities, are salaried employees, and have not been entitled to overtime pay because of their employment classification." *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, *7 (attached as Ex. 1).  This Court made this finding based upon the affidavit of Defendant's officer John J. Geer, who described the duties of AD Adjusters *as a whole*, making no allowance for the individualized circumstances GEICO now seeks to invent.  *See id; see also* Aff. of John Geer (attached hereto as Ex. 3).

Mr. Geer, as GEICO's witness pursuant to Fed. R. Civ. P. 30(b)(6), later confirmed that there are no significant differences between the job duties of AD Adjusters across the country. *See* Memorandum, at 8-9 (discussing and quoting Mr. Geer's deposition testimony).  This evidence is more than enough to satisfy the requirement that Plaintiffs make a "'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, *7 (attached as Ex. 1) (quoting *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997)).

GEICO's only half-hearted arguments to the contrary are: (1) that Plaintiff McGruder was a sub-par employee; (2) that discretion and supervision varied among class members; and (3) that

8

damages will vary among adjusters.  Opposition at 6.  All of these points are unsupported and

unpersuasive.  Regarding Plaintiff McGruder's abilities, GEICO's allegations are untested and

thus entitled to no weight.  More fundamentally, GEICO cites no case law in support of its

implied position that notice would be inappropriate if its allegations are accurate – and there is

none.  Whether McGruder was a slow or fast worker is simply irrelevant to whether AD

Adjusters have similar job responsibilities and were subject to a common plan.

GEICO's second argument – that amount of discretion and supervision varies among

adjusters – is not only unsupported, it is contrary to the entire record in *Robinson-Smith*.  In

summary judgment briefing in *Robinson-Smith*, GEICO submitted or addressed well over a

hundred statements of fact on behalf of AD Adjusters *as a whole*, and never argued that there

were any significant differences among adjusters.  *See Robinson-Smith*, Dkt. No. 100 (Plf.'s

Reply in Supp. For Mot. For Summ. J., Consolidated Statement of Facts).  Having conceded that

its AD Adjusters were similarly-situated in the hopes of a clean sweep victory in *Robinson-

Smith*, GEICO's recently-found but wholly unsupported conviction that there is variation among

AD Adjusters should be viewed with – at least – suspicion.  Certainly GEICO's assertions are

insufficient to undermine the conclusion that Plaintiffs' evidentiary showing meets the standard

for the issuance of notice.

GEICO's third argument – that individual damages will vary among adjusters – has

already been conclusively rejected by this Court as a barrier to notice.  *See Robinson-Smith*, 2001

U.S. Dist. LEXIS 25516, *7 (attached as Ex. 1) ("Nor do possible variations in individual

damage claims defeat class certification.").  Nor should this ruling be disturbed.  GEICO's

contention that variations in damages defeat notice would effectively preclude notice in all cases

that allege mis-classification of employees because it would be rare that any group of salaried

employees worked the exact same number of hours and thus were entitled to identical damages.

But literally dozens of courts across the country have certified FLSA collective actions alleging

mis-classification.[6]  Indeed, one Court has stated that "typical FLSA class action" is one that

presents the question of "whether a particular FLSA exemption applies." *Daggett v. Blind*

*Enters. of Or.*, No. CV 95-421-ST, 1996 U.S. Dist. LEXIS 22465, *19-20 (D. Or. April 18,

1996).  Against this backdrop of case law, Defendant's contention is wholly unpersuasive.

   **C.    Plaintiffs' Proposed Form Of Notice Is Appropriate.**

       Plaintiffs propose a form of notice substantively identical to the one already negotiated by

the parties and adopted by this Court, except that this notice should contain a reference to the

liability decision in *Robinson-Smith*.  GEICO does not oppose this form of notice except to argue

that the notice should also state: (1) that *Robinson-Smith* is not determinative of this action; and

(2) that this Court certified *Robinson-Smith* for interlocutory appeal.  Opposition at 7.  Plaintiffs

do not oppose the inclusion of language stating that *Robinson-Smith* is not determinative of this

action.  The language regarding interlocutory appeal, however, is likely to be confusing to class

members, who almost certainly will have no idea what an interlocutory appeal is, let alone the

---

   [6] *See, e.g.*, *Roebuck v. Hudson Valley Farms*, No. 00-CV-1927, 2002 WL 31939112, at *1
(N.D.N.Y. Dec. 18, 2002) (issuing notice to potential class of  farm workers who alleged that they
were mis-classified as exempt from FLSA); *Scott v. Aetna Servs., Inc.* 210 F.R.D. 261, 263 (D.
Conn. 2002) (issuing notice to a potential class of systems engineers who alleged that they were mis-
classified as exempt from FLSA); *Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787(HB), 2002
WL 1009463, at *1-3 (S.D.N.Y. May 17, 2002) (issuing notice to potential class of current and
former assistant directors of college admissions who alleged that they were mis-classified as exempt
from FLSA); *Kelley v. SBC*, No. 97-CV-2729 CW, 1998 WL 928302 (N.D. Cal. Nov. 13, 1998);
*Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000); *Gregory v. Home Depot U.S.A., Inc.*,
3:01-CV-372(AWT) (slip. op. D. Conn. July 3, 2001); *New Jersey Dept. of Labor v. Pepsi-Cola Co*,
No. A-918-00T5, 2002 WL 187400, at *87-88 (N.J. Super. Ct. App. Div. Jan. 31, 2002).

meaning of what it means for GEICO to be seeking interlocutory review. Such language should not be included.

**D.    Plaintiffs' Motion For Class Certification Should Be Granted.**

1.    GEICO's Jurisdictional Arguments Are Flawed.

The vast majority of GEICO's jurisdictional arguments already were addressed in Plaintiffs' Opposition to GEICO's Motion to Dismiss. The only exception is GEICO's reference – for the first time – in its Reply In Support Of Its Motion to Dismiss to *McClain v. Leona's Pizzeria* ("*McLain*"), 04-C-1913, 2004 U.S. Dist. LEXIS 14779 (N.D. Ill. July 30, 2004) (attached to Reply as Ex. 1). Reply at 1-2. Because Plaintiffs were not afforded an opportunity to address *McClain* in the briefing on GEICO's Motion to Dismiss, we briefly do so here.

*McClain* improperly conflates the limits of federal jurisdiction pursuant to 28 U.S.C. § 1367(a) with the requirements to obtain relief pursuant to the FLSA. *McClain*, at 4-5. It is of course true that 29 U.S.C. § 216(b) provides that no person shall be eligible to obtain relief pursuant to the FLSA unless they have filed a consent to join the action. *See* 29 U.S.C. § 216(b). This does not have any impact, however, on the ability of this Court to exercise supplemental jurisdiction over employees with claims under New York state law that form part of the same "case or controversy." *See* 28 U.S.C. § 1367(a). Thus, New York employees who do not opt-in to this action pursuant to the FLSA (and do not opt-out pursuant to Federal Rule 23) may obtain the relief to which they are entitled under New York law, but will not be able to avail themselves of the relief available under the FLSA.

The distinction is not academic. Employees who choose to join the FLSA class will be presumptively entitled to double damages unless GEICO can demonstrate good faith. *See* 29

11

U.S.C. § 255.  Further, these double damages will extend back for three years if Plaintiffs

demonstrate that GEICO's violation of the FLSA was willful.  *See* 29 U.S.C. § 216(b).  New

York state law does not provide for such additional relief in the class action context.  *See* Labor

Law Section 663 (providing for only single damages).  This limitation on the damages available

to employees who do not elect to join the FLSA collective action fulfills the purpose of the

Portal-to-Portal Act's "opt-in" requirement, while leaving intact the plain language and

Congressional purpose of the supplemental jurisdiction statute, 28 U.S.C. 1367(a), which was

intended to permit the exercise of pendent party jurisdiction over related state law claims.  *See*

Opp'n to Mot. to Dismiss, Dkt. No. 6, at 7-9, and authorities cited therein.

### 2.  Notices Can Be Designed To Eliminate Class Member Confusion.

GEICO's purported concern over the potential for confusion if opt-in and opt-out notices

both are issued calls to mind the Seventh Circuit's admonition that:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who
> supposedly undertakes to assist the court in determining whether a putative class should
> be certified.  When it comes [to determining that issue] . . . it is a bit like permitting a fox,
> although with a pious countenance, to take charge of the chicken house.

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.

1981).  GEICO's supposed worry about potential class member confusion, after all, was not so

significant in the past that it deterred GEICO from sending an additional letter to all potential

collective action members in *Robinson-Smith* advising them that the action was meritless.  Nor is

this concern about confusion sufficient to deter GEICO from insisting that class members be

advised of the pendency of a petition for interlocutory review  – hardly a phrase or concept

familiar to the layperson.

12

In any event, GEICO's concerns are overblown. Plaintiffs propose to send two separate notices to two overlapping groups of class members. Plaintiffs propose to send an opt-in notice to potential collective action members immediately. Later, following the deposition of Plaintiff McGruder and the briefing that will undoubtedly follow, Plaintiffs will send an opt-out notice to GEICO employees in New York. This opt-out notice easily can be constructed to reference the earlier notice, make it clear why the second notice is being sent, and describe what is expected of putative class members.[7] As the Court in *Ansoumana* noted in rejecting similar arguments, "Competent counsel will be able to draft appropriate notices, and they and the court should be able to manage this case fairly and efficiently." *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 95 (S.D.N.Y. 2001) (citing cases in which opt-in and opt-out notices have been issued). The same is true here.

3.   New York Class Members Can Waive Their Right To Liquidated Damages By Opting Out Of The New York Subclass.

GEICO first argues, as usual with no citation to any authority, that Plaintiff McGruder cannot pursue a class action because he has not filed an affidavit stating that he is willing to waive liquidated damages, which Plaintiffs agree are not available on a class-wide basis under New York law. *See* Opposition at 9. Simply put, there is no requirement that any such affidavit be filed. GEICO remains free to question Plaintiff McGruder regarding this issue at his deposition; this will provide more than sufficient opportunity for GEICO to confirm that Plaintiff McGruder understands his choices. In addition, Plaintiffs shortly will seek leave to file an

---

[7] Plaintiffs do *not* propose, as was apparently the case in *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802-KI, 1999 WL 1081357, at *4 (D. Or. 1999), which GEICO cites, to send a single notice addressing both the opt-in and the opt-out process to the same group of prospective class members.

13

amended complaint making the waiver of liquidated damages clear.  No further action is required.

GEICO's second argument, that a class action is inappropriate because waivers of the right to make a legal claim must be clear and unequivocal under New York law, misses the mark. Opposition at 9.  The two cases GEICO cites in support of this proposition both are non-class action cases in which one party attempted to rely on either a vague and contradicted release or the opposing parties' silence to bar a lawsuit.  *See* Opposition at 9, *citing West End Interiors, Ltd. v. Aim Constr. & Contracting Corp.*, 729 N.Y.S. 2d 112 (N.Y. App. Div. 2001); *Comvest Consulting, Inc. v. W.R.S.B. Development Co.*, 698 N.Y.S. 2d 807 (N.Y. App. Div. 1999).[8]  Here, in contrast, Plaintiffs intend to send a clear opt-out notice, in a form approved by the Court, that advises class members that if they do wish to sue GEICO for unpaid overtime and do not wish to forego the opportunity to collect 25% liquidated damages, they should opt-out of this action and attempt to file their own individual action.  Any class members' decision to remain in the class after receiving the notice will be a clear and unequivocal decision.

It is thus unsurprising that, as Plaintiffs noted in their Opposition to GEICO's Motion to Dismiss, every New York State Appellate Court to address this issue has approved of the procedure Plaintiffs propose.  *See* Opposition to Mot. to Dismiss, Dkt. No. 6, at 11, and

---

[8] In *West End*, Defendant attempted to use a vaguely worded release attached to partial payments it made to the Plaintiff subcontractor to attempt to bar the Plaintiff's action for full payment for work completed for Defendant. *West End*, 729 N.Y.S. 2d at 113-114.  This effort ran afoul of New York doctrine regarding the interpretation of releases attached to partial payments and was inconsistent with the conduct of the parties. *Id.* at 114-115.  In *Comvest*, Defendant attempted to use a broker's silence regarding the amount of his brokerage fee to deny the Plaintiff a fee altogether. *Comvest*, 698 N.Y.S. 2d at 808-809.  This effort was rejected because New York law requires that a broker be paid a reasonable commission even in the absence of an express agreement. *Id.*

14

authorities cited therein.  This procedure also was accepted by the Court in *Ansoumana*, and is

contemplated by the Federal Rules.  *See Ansoumana*, 201 F.R.D. at 95; *see also generally* Fed. R.

Civ. P. 23(d) and Advisory comments thereto (discussing potential uses for class notice,

including permitting class members to proceed collectively as to certain claim and not others).

### 4.     The New York State Subclass Is Appropriate For Certification.

#### a.     Plaintiff McGruder's Claim Is Typical.

As GEICO apparently concedes, Rule 23(a)(3) requires only that the *claims of* the named

plaintiff be typical of the *claims of* the class he seeks to represent.  *See* Opposition at 11; Fed. R.

Civ. P. 23(a)(3).  GEICO ignores this language, however, and argues that Plaintiff McGruder "is

not the typical GEICO Auto Damage Adjuster" because he allegedly was unable to perform his

work in a timely fashion.  *See* Opposition, at 11.  Plaintiffs, of course, have been afforded no

opportunity to test this allegation, and so thus are unable to respond as to its accuracy.

Even if true, however, GEICO's point is irrelevant.  Plaintiff McGruder's *claim* is that his

job duties were inconsistent with his classification as an exempt employee.  *See* Compl., at ¶1.

This also is the claim of the members of the New York subclass.  *Id.* at ¶¶35-39.  It does not

matter for purposes of the exemption analysis whether Plaintiff McGruder (or any class member)

performed these duties with any particular degree of efficiency or at any particular speed.[9]

#### b.     Individual Questions Will Not Predominate.

---

[9] GEICO's citation to *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565 (6th Cir. 2004) is thus
inapposite.  Opposition at 11.  As GEICO notes, *Honda* was a discrimination action in which
discrimination in promotions was alleged.  *See Honda*, 370 F.3d 565, Opposition at 11.  In such an
action, the Plaintiff's personal decisions regarding promotions (for example, the decision as to
whether or not to express an interest in being promoted) may be relevant to the question of liability.
Here in contrast, the speed at which Plaintiff performed his work is not relevant to whether GEICO
owes Plaintiff McGruder for unpaid overtime.

    (1)  Liability Can Manageably Be Adjudicated In A Single
        <u>Proceeding</u>.

As this Court and the parties are aware, *Robinson-Smith* successfully was adjudicated on

a class-wide basis.  This was not due to some stipulation or agreement of the parties.  Rather,

class-wide adjudication was possible because the record in *Robinson-Smith*, including the

testimony of GEICO's witness pursuant to 30(b)(6), made it abundantly clear that the job duties

of AD Adjusters do not vary in any way significant to the exemption analysis:

  Q:  Do you think that the jobs of damage adjusters in different regions differ in any
      way that would be material to the question of whether or not they are exempt
      under the Fair Labor Standards Act?

  A:  I certainly don't believe there is because I believe, as I described it, that is the job
      in the company.

Dep. of John Geer, at 136-137, attached as Ex. 6 to Memorandum.

  GEICO does not address this testimony, or provide any analysis as to how the job duties

of adjusters might vary in a way material to the exemption question.[10]  Rather, GEICO merely

asserts that the exemption inquiry is by definition an individualized question.  This position,

however, is contrary to the experience of many courts, including this one, that have successfully

adjudicated the exempt status of classes of employees without need for extensive individualized

inquiry.  *See supra* at 11 n.7, and cases cited therein.  *See also Scott*, 210 F.R.D.at 267.  *Scott* is

---

  [10] The only variations among class members GEICO even suggests are potentially
problematic are variations in supervisory control and variations in the contentiousness of
negotiations in different regions.  Opposition at 13.  Both of these supposed variations, however, are
unsupported by any citation.  This omission is striking in light of the fact that in *Robinson-Smith*
GEICO produced thousands of pages of documents, including over a hundred personnel files, that
likely would have evidenced such variation if it existed.  Moreover, even if GEICO's claims of
variations were accurate (and there is no reason to think they are) they would not go to the core
exemption question analyzed by this Court, the level of discretion and independent judgment
accorded AD Adjusters.

Case 1:04-cv-01213-PLF   Document 16   Filed 09/15/04   Page 19 of 21


particularly instructive.

In *Scott*, Plaintiffs challenged the exempt status of Systems Engineers, and sought certification of an opt-in class pursuant to 29 U.S.C. § 216(b) and an opt-out class pursuant to Fed. R. Civ. P. 23 and the Connecticut Minimum Wage Act. *Scott*, 210 F.R.D. at 263. The Court first addressed typicality arguments quite similar to those advanced by GEICO, holding:

> The claims of the class representatives . . . are typical of those of the Rule 23 class members. Again, the representatives and potential class members each performed the work of a Systems Engneer as defined by Aetna, and each was allegedly underpaid the overtime compensation they were entitled to receive for their services.

*Id.* at 267. The Court then went on to address the predominance issue:

> Finally, Rule 23(b)(3) permits this case because, as indicated with regard to the Rule 23(a) requirements, whether Aetna acted improperly in classifying the plaintiffs is the common liability issue that predominates over all other factual and legal issues.

*Id.* A similar analysis is appropriate here: the predominant question in this action (as in *Robinson-Smith*) will be the legality of GEICO's decision to classify its AD Adjusters – all of whom perform similar job duties – as exempt.

(2)    Individualized Damages Questions Will Not Predominate.

Defendant's final argument in favor of its position that the class should not be certified relies on variations in damages among the class members. *See* Opposition at 8. But this argument has been rejected so consistently by so many courts across the country that the contrary proposition – that variations in individual damages typically will *not* defeat class certification – is now black letter law. *See, e.g, Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, *5 (attached as Ex. 1); *Shipes v. Trinity Indus.*, 987 F.2d 311, 318 (5th Cir. 1993); *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1444-45 (9th Cir. 1984); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456

(3rd Cir. 1977); *In re Prudential Ins Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 517 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *Reynolds v. Alabama Dept. of Transp.*, 955 F. Supp. 1428, 1430, 1433 (M.D. Ala. 1997); *Franks v. O'Connor Corp.*, No. 92-0947, 1993 U.S. Dist. LEXIS 3415, *8-9 (E.D. Pa. March 17, 1993); *5 Newberg on Class Actions* § 24.119-20.[11] The reasoning behind these decisions is plain:  if individual damages issues precluded certification, then no class or collective actions would ever be certified, because it is very unlikely that *any* two or more plaintiffs would have suffered damages in the exact same amount. That is not the law, and Defendant's suggestion to the contrary is wrong. *See also supra* at 10-11.[12]

> c.    A Class Action Is Superior And Manageable.

GEICO raises no new arguments on the superiority issue that have not already been addressed at length.  The supposed "factual and legal difficulties" GEICO has conjured up in opposition to class certification are merely a smokescreen erected in the hopes of avoiding liability for its decision to mis-classify its AD Adjusters and refuse to pay them overtime.  They

---

[11] To the extent that GEICO's argument is that certification is inappropriate because GEICO failed to keep accurate track of how many hours its AD Adjusters worked, the argument should be dismissed out of hand.  To permit employers to escape class liability by failing to keep accurate records of hours worked would simply encourage employers not to keep accurate records.  This result is contrary to the broad, remedial purpose of the FLSA. Furthermore, it is well settled law that defendant bears the burden of accurately tracking employees' hours. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Robinson-Smith*, 2001 U.S. Dist. LEXIS 25516, *5 n.8 (attached as Ex. 1).

[12] GEICO's argument that the damages calculation will be unduly complicated because some AD Adjusters were paid for some Saturday work time is frivolous.  GEICO, of course, maintains records of the Saturday time it has paid its AD Adjusters.  Thus, once the number of overtime hours worked by AD Adjusters has been proven as a matter of "just and reasonable inference," *Anderson*, 328 U.S. at 687, the Saturday hours for which any AD Adjuster was paid will be deducted from the damages owed to that AD Adjuster.

should be disregarded, and this action should be certified as a class action.

## III.   CONCLUSION

For the reasons set forth herein and in Plaintiffs' Memorandum of Law In Support of

Collective Action Notice And Class Certification, notice of this action should issue immediately,

and the New York State subclass should be certified pursuant to Federal Rule 23(b)(3).


    s/ Charles Tompkins
Michael D. Hausfeld, D.C. Bar No. 153742
Charles E. Tompkins, D.C. Bar No. 459854
**COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005-3934
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

Thomas V. Urmy, Jr.
Todd S. Heyman
**SHAPIRO, HABER & URMY, LLP**
53 State Street
Boston, Massachusetts  02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134